O

# United States District Court
# Central District of California

MICHAEL ROCCA,

              Plaintiff,

    v.

DEN 109 LP dba DENNY'S #7425;
FRITZ MOLLER; and GEISELA
MOLLER,

            Defendants.

Case No. 2:14-cv-00538-ODW-MRW

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [37]**

## I.   INTRODUCTION

Plaintiff Michael Rocca moves for summary judgment on its claim against Den 109 LP dba Denny's #7425, Fritz Moller, and Geisela Moller (collectively "Defendants") for violating the Americans with Disabilities Act (the "ADA") and California's Unruh Civil Rights Act (Cal. Civ. Code § 51). Plaintiff argues that because he encountered at least fifteen architectural barriers prohibited by the ADA at Defendants' establishment, Defendants violated the ADA for failing to keep their facilities fully and equally accessible to persons with disabilities by ensuring compliance with federal building codes. Plaintiff further argues that because Defendants violated the ADA they necessarily violated the Unruh Civil Rights Act. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment. [1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

Plaintiff is a T-6 paraplegic who uses a wheelchair for mobility and "a mobility equipped vehicle when traveling."   (ECF No. 37-1 ("SUF") Nos. 1, 45.)   On December 18, 2013, Plaintiff visited Defendants' restaurant where he allegedly encountered "at least fifteen (15) access barriers."  (Mot. 2.)  These alleged access barriers included handicap spaces, access aisles, and bathroom appliances all allegedly noncompliant with ADA guidelines.  (Compl. ¶ 10.)  Plaintiff alleges that these barriers prevented him "from enjoying full and equal access" to the restaurant and deterred him from future visits.  (*Id.* ¶¶ 10–11.)

On January 23, 2014, Plaintiff filed a Complaint in federal court alleging violations of the ADA, the Unruh Civil Rights Act, the California Disabled Persons Act, and California Health and Safety Code section 19955(a).   (*Id.* ¶¶ 15–51.) Defendants filed an Answer on March 19, 2014 denying any liability to Plaintiff. (ECF No. 10.)   Subsequently, Plaintiff propounded written discovery, *including Requests for Admissions* ("RFA"), served upon Defendants via U.S. mail on September 11, 2014.  (Mot. 4; *see also* Mot. Ex. 7.)  Defendants were required to respond by October 14, 2014, but failed to do so.  (Mot. 4.)

On January 26, 2015, at the parties' final pretrial conference, Plaintiff informed the Court that Defendants failed to respond to their RFA.  Following the hearing, the Court gave Plaintiff leave to move for summary judgment and continued the trial date until after a ruling on the motion.  (*Id.*)  On February 16, 2015, Plaintiff filed his Summary Judgment Motion.  (ECF No. 37.)  An Opposition and Reply were timely filed.  (ECF Nos. 38, 42.)  That Motion is now before the Court for consideration.

## III.   LEGAL STANDARD

Summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

(1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine dispute for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The Court may not weigh conflicting evidence or make credibility determinations. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## IV.  DISCUSSION

### A.  Defendants' Failure to Respond to Plaintiff's RFA

Federal Rules of Civil Procedure 36(a)(1)(A) permits a party to serve "on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: facts. . . ."  Further, Rule 36(a)(3) provides, "*[a] matter is admitted unless,* within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  *Id.* (emphasis added).  Accordingly, because Defendants failed to timely respond to Plaintiff's RFA those matters contained therein are deemed admitted.

While the Court acknowledges it *may*, in its discretion, amend or withdraw the

admissions pursuant to Rule 36(b),[2] Defendants filed no motion requesting the Court to do so.  Further, Defendants do not discuss Plaintiff's RFA at all in their Opposition.  Therefore, the Court finds the matters contained in Plaintiff's Request for Admissions conclusively established pursuant to Rule 36.

**B.     Plaintiff's ADA Claim**

Plaintiff established that Defendants violated Title III of the ADA.  Title III provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).  To prevail on his Title III, ADA claim, Plaintiff must establish that (1) he is disabled within the meaning of the ADA; (2) that Defendants are private entities that own, lease, or operate, a place of public accommodation; (3) that Plaintiff was denied public accommodation by Defendants because of his disability; (4) that the fifteen barriers Plaintiff allegedly encountered present architectural barriers prohibited under the ADA; and (5) the removal of those barriers are readily achievable.  *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 2007–08 (C.D. Cal. 2014) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) and *Parr v. L&L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D.Haw. 2000)).  Defendants admit that removal of the barriers is readily achievable (Declaration of Khushpreet Mehton, Ex. D at 11 ¶ 5.); therefore the remaining four requirements will be discussed in turn.

**1.     *Plaintiff is disabled***

Under the ADA, a "disability" is "a physical or mental impairment that

---

[2] Rule 36(b) provides, "[a] matter admitted under this rule is conclusively established unless the court, *on motion*, permits the admission to be withdrawn or amended.  *Id.* (emphasis added).

4

substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).  The
ADA lists "walking" and "standing" as "major life activities."  *Id.* § 12102(2)(A).  It
is undisputed that Plaintiff is a paraplegic and thus clearly disabled under this
definition.  *See Vogel*, 992 F. Supp. 2d at 1009 (holding paraplegic plaintiff was
disabled within the meaning of the ADA).

### 2. *Defendants own, lease, or operate a place of public accommodation*

The ADA specifically lists restaurants as "private entities considered public
accommodations."  42 U.S.C. § 12181(7)(B).  Further, Defendants admit the
restaurant is a place of public accommodation which they own and operate.  (ECF No.
10 ¶¶ 7, 9.)  Therefore, this requirement is met.

### 3. *Plaintiff was denied public accommodation by Defendants because of his disability and encountered architectural barriers prohibited by the ADA*

The Court analyzes the third and fourth elements together.  Plaintiff alleges that
he was denied public accommodation by Defendants because he encountered at least
fifteen architectural barriers prohibited by the ADA.  The Court finds that Plaintiff
fails to meet his burden in several of these alleged violations.  However, since Plaintiff
establishes he encountered at least one architectural barrier prohibited by the ADA,
and therefore was denied public accommodation by Defendants because of his
disability, he meets this requirement.  Each architectural barrier will be discussed in
turn.

As an initial matter, the Court reiterates the burden Plaintiff, as the moving
party, bears in establishing his claims on a motion for summary judgment.  Federal
Rules of Civil Procedure 56(a) provides that "[t]he party moving for summary
judgment has both an initial burden of production . . . *and the ultimate burden of
persuading the court* that there is 'no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law.'"  Hon. A. Wallace Tashima &
James M. Wagstaffe, Cal. Prac. Guide Fed. Civ. Pro. Before Trial § 14:123 (The

Rutter Group 2015) (emphasis added).  Because summary judgment is a "drastic device" the moving party bears a "*heavy burden* of demonstrating the absence of any material issues of fact."  *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 161 (2d Cir. 1999) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *cert denied*, 484 U.S. 918 (1987)) (internal quotation marks omitted) (emphasis added).  "Moreover, in reviewing a Rule 56 motion, *a district court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion*."  *Id.* (emphasis added).

### a.   Both Access Aisles Have Slopes and Cross Slopes that Exceed 2.0%

Plaintiff asserts that Defendants violated ADA Accessibility Guidelines ("ADAAG")[3] sections 406.1 and 406.2 because both access aisles at Defendants' establishment have slopes and cross slopes that range from 2.4% to 4.5%.  (Mot. 7.) Although Plaintiff's argument has merit, he cites to the incorrect ADAAG section. The correct ADAAG provision, *section 502.4*, provides that access aisles "shall be at the same level as the parking spaces they serve" and should be "nearly level in all directions" with slopes not to exceed a 1:48 ratio or 2.08%.  The advisory note to section 502.4 further provides that "[b]uilt-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48."  Defendants admit the access aisles have slopes and cross slopes that exceed 2.0% due to encroaching built-up curb ramps.  (SUF No. 7)  Therefore, Defendants violated this provision of the ADAAG.

### b.   The Words "NO PARKING" are Not Painted Within the Access Aisles

Plaintiff asserts that Defendants violated ADAAG section 502.3.3 by failing to mark the parking access aisles with the words "NO PARKING."  (Mot. 8.)  Plaintiff's assertion is wrong.  Section 502.3.3 states, "[a]cess aisles shall be marked so as to discourage parking in them."  However, although section 502.3.3 mandates the access aisles be "clearly marked," it does not provide the specific language that must be used.

---

[3] All references are to the 2010 version of the ADAAG.

*Id.*  The advisory note to section 502.3.3 titled "Marking" provides: "*The Method and color of marking are not specified by these requirements* but may be addressed by State or local laws or regulations."  *Id.* (emphasis added).  Plaintiff does not cite a specific California law or regulation that requires the access aisles to contain the words "NO PARKING."  Accordingly, Plaintiff failed to establish Defendants committed a violation here.

      c.   <u>Both Disabled Parking Spaces Have Slopes and Cross Slopes that Exceed 2.0%</u>

Plaintiff asserts that Defendants violated ADAAG sections 406.1 and 406.2 because both disabled parking spots at Defendants' establishment have slopes and cross slopes that range from 2.8% to 3.6%.  (Mot. 8.)  Although Plaintiff's argument has merit, he again cites to the incorrect ADAAG section.  As discussed, section 502.4 provides: (1) "[a]ccess aisles shall be at the same level as the parking spaces they serve"; and (2) access aisles cannot have slopes that exceed a 1:48 ratio or 2.08%.  Therefore, it follows that section 502.4 also prohibits disabled parking spaces with access aisles from having slopes exceeding a 1:48 ratio or 2.08%.  Defendants admit that both of the disabled parking spaces have slopes and cross slopes that exceed 2.0%.  Therefore, Defendants violated this provision of the ADAAG.

      d.   <u>The Signage Posted at the Van Accessible Parking Space is Incorrect</u>

Plaintiff asserts that Defendants violated the ADA by failing to provide proper "van-accessible" signs.  (Mot. 9.)  However, Plaintiff fails to explain *how* Defendants failed to provide proper "van-accessible" signs.  Plaintiff cites to one ADAAG section: section 703.7.2.1.  Section 703.7.2.1 provides an image of the International Symbol of Accessibility.  Here, for Plaintiff to establish Defendants violated the ADA, he must show that Defendants failed to comply with the International Symbol of Accessibility instructed by section 703.7.2.1.  Plaintiff fails to make such a showing and therefore fails to establish Defendants violated the ADA.

      e.   <u>The Tow Away Signage Posted is Incorrect</u>

Plaintiff asserts that Defendants violated the ADA by failing to provide correct

tow away signage with lettering at least one inch in height.  (Mot. 9–10.)  However, Plaintiff only cites to the California Manual on Uniform Traffic Control Devices section 2B.39 and California Building Code section 1129B.5 for its proposition that: (1) the tow away signage must include the location and telephone number where owners may reclaim vehicles; and (2) that information must be displayed in lettering at least one inch in height.  (*Id.*)  In order for a plaintiff to allege he was denied public accommodation on the basis of his disability under the ADA, he must establish that the defendant violated the ADAAG.  *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 848 (N.D. Cal. 2011) (citing *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)).  Here, because Plaintiff cites only to the California manual on Uniform Traffic Control Devices and the California Building Code, he fails to establish Defendants violated the ADA.

> f.     There is No Handle Mounted Below the Water Closet Stall Door Lock

Plaintiff asserts that Defendant violated the ADA by failing to provide a handle below the water closet stall door lock.  (Mot. 10.)  However, Plaintiff only cites to California Building Code section 1115B.7.1.4 for the proposition that the inside and outside of a water closet compartment door must be equipped with a loop or u-shaped handle located immediately below the latch.  (*Id.*)  Again, for his ADA claim, Plaintiff must establish that Defendants violated the ADAAG.  *Moeller*, 816 F. Supp. 2d at 848 (citing *Chapman*, 631 F.3d at 945).  Here, because Plaintiff cites only to the California Building Code, he fails to establish this requirement.

> g.     The Water Closet Stall Door is Not Self-Closing

Plaintiff asserts Defendants violated ADAAG sections 604.8.1.2 and 604.8.2.2 by failing to have wheelchair accessible bathroom stall doors that were self-closing.  (Mot. 11–12.)    Section 604.8.2.2 provides that wheelchair accessible toilet compartment doors must be self-closing.    Defendants admit that at the time of Plaintiff's visit, the wheelchair accessible bathroom stall door was not self-closing.  (SUF No. 26.)  Therefore, Defendants violated this provision of the ADAAG.

h.   The Waste Receptacle Protrudes into the Clear Maneuvering Space Needed to Access the Water Closet

Plaintiff asserts Defendants violated ADAAG section 604.3.1 because the waste receptacle stored within the stall obstructed the clear maneuvering space needed to access the water closet. (Mot. 11.)  Section 604.3.1 provides "[c]learance around a water closet shall be 60 inches (1525 mm) minimum measured perpendicular from the side wall and 56 inches (1420 mm) minimum measured perpendicular from the rear wall."  Although Plaintiff asserts the waste receptacle protruded into the required clear maneuvering space, he fails to cite to any specific evidence to support this claim.  Plaintiff cites only to his SUF and RFA—both of which merely point out that Denny's admits the waste receptacle obstructed the required clear maneuvering space.  (Mot. 11–12.)  Section 604.3.1 specifically defines when an object obstructs the required clearance around a water closet.  Plaintiff has failed to provide the Court with measurements showing that the position of the waste receptacle was either less than 60 inches measured perpendicular from the sidewall or less than 56 inches measured perpendicular from the rear wall.  Instead, Plaintiff merely provides conclusory statements and thus fails to meet his burden of persuasion.  *Nationwide*, 182 F.3d at 161.  Therefore Plaintiff fails to prove Defendants violated this provision of the ADAAG.

i.   The Toilet Tissue Dispenser Obstructs the Use of the Side Grab Bar

Plaintiff asserts Defendants violated ADAAG section 609.3 because the toilet tissue dispenser in the water closet obstructed the use of the side grab bar.  (Mot. 12.) Section 609.3 provides "[t]he space between the grab bar and projecting objects below and at the ends shall be 1 ½ inches (38 mm) minimum."  Again, Plaintiff fails to cite to any specific evidence to support his claim.  Plaintiff cites only to his SUF and RFA—both of which merely point out that Denny's admits that the toilet dispenser obstructs the use of the grab bar. (Mot. 12.)  Section 609.3 specifically defines when a projecting object obstructs the use of the grab bar.  Therefore, Plaintiff should have provided the Court with measurements showing that the position of the toilet

dispenser was less than the required 1 ½ inches away from the grab bar.  Plaintiff fails to meet his burden here and therefore fails to establish Defendants violated this section of the ADAAG.  *Nationwide*, 182 F.3d at 161.

j & k.     The Toilet Tissue Dispenser is Mounted Too Far From the Back Wall and From the Froth of the Water Closet

Plaintiff asserts Defendants violated the ADA and attendant California state laws because the toilet tissue dispenser was located more than twelve inches from the front of the water closet and more than thirty-six inches from the back wall.  (Mot. 12–13.)  Plaintiff argues that California Building Code section 1115B.9.3 requires toilet paper dispensers to be mounted within twelve inches of the front edge of the toilet seat.  (Mot. 12.)  However, Plaintiff also concedes that ADAAG section 604.7 only requires that toilet paper dispensers "be 7 inches (180mm) minimum and 9 inches (230mm) maximum in front of the water closet measured to the centerline of the dispenser."  Plaintiff attempts to resolve this inconsistency by pointing out that the ADA explicitly recognizes that stricter state standards survive federal preemption.  (Mot. 12–13.)  While Plaintiff is correct (*see* 42 U.S.C. § 12201(b) and 28 C.F.R. § 36.103(c)), whether or not the ADA preempts stricter state laws is irrelevant to his *ADA claim*.  For Plaintiff's ADA claim, Plaintiff must establish that Defendants violated the ADAAG—it is irrelevant if Defendants violated a stricter state law.  Here, Plaintiff fails to establish that the centerline of the toilet paper dispenser was less than seven inches or more than nine inches from the front of the water closet.  Therefore, Plaintiff fails to establish Defendants violated these sections of the ADAAG.

l.     The Pipes Underneath the Lavatories are Improperly and/or Incompletely Wrapped

Plaintiff asserts that Defendants violated ADAAG section 606.5 by failing to properly and completely wrap the pipes beneath the lavatories.  (Mot. 13.)  Section 606.5 provides in relevant part: "[w]ater supply and drain pipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact."  Plaintiff argues that at the time of his visit, the pipes beneath the lavatory were "improperly

and incompletely wrapped, and therefore not completely insulated." However, Plaintiff fails to explain how the pipes beneath the lavatory were improperly and incompletely wrapped. Plaintiff cites only to his SUF and RFA which merely provide that "Denny's admitted that the pipes beneath the lavatories are improperly and incompletely wrapped, thus causing Rocca to risk burning his legs when washing his hands." (SUF No. 38.) Here, Plaintiff again fails to satisfy his burden of persuading the court that the pipes under the lavatory were improperly or incompletely wrapped. *Nationwide*, 182 F.3d at 161. Instead, Plaintiff conclusively states the pipes were noncompliant but fails to offer any explanation as to why or how they are noncompliant. Therefore, Plaintiff fails to establish Defendants violated this section of the ADAAG.

m.   The Waste Receptacle Obstructs the Clear Floor Space Required to Access the Paper Towel Dispenser

Plaintiff asserts that Defendant violated the ADA because the waste receptacle in the restroom obstructs the clear floor space required to access the paper towel dispenser. (Mot. 14.) However, Plaintiff only cites to California Building Code section 1118B.4.1 for the proposition that there must be a minimum of 30"x 48" of clear floor or ground space to allow forward and/or parallel approaches to accessories such as paper towel dispensers. (*Id.*) Plaintiff again fails to allege a violation of the ADAAG and thus does not properly allege Defendants violated the ADA. *Moeller*, 816 F. Supp. 2d at 848 (citing *Chapman*, 631 F.3d at 945).

n.   The Paper Towel Dispenser is Mounted Too High

Plaintiff asserts that Defendant violated the ADA because the operable part of the paper towel dispenser in the restroom was mounted more than 40 inches above the floor. (Mot. 14.) However, Plaintiff only cites to California Building Code section 1115B.9.2 for the proposition that the operable parts of paper towel dispensers must be mounted a maximum of 40 inches above the floor. (*Id.*) Plaintiff again fails to allege a violation of the ADAAG and thus does not properly allege Defendants violated the ADA. *Moeller*, 816 F. Supp. 2d at 848 (citing *Chapman*, 631 F.3d at

945).

o.   <u>There is Insufficient Strike Side Clearance on the Pull-Side of the Restroom Door</u>

Plaintiff asserts that Defendants violated ADAAG section 404.2.4.1 because there was only approximately six inches between the pull-side of the restroom door and the nearby lavatory.   (Mot. 15.)   ADAAG section 404.2.4.1 provides the minimum required maneuvering clearance at manual swinging doors.   Table 404.2.4.1 defines these minimum requirements by providing measurements for three approaches: (1) front approach, (2) hinge-side approach, and (3) latch-side approach. Plaintiff maintains that at the time of his visit, there was only approximately six inches between the pull-side of the door and the nearby lavatory.   (Mot. 15.)   However, Plaintiff only cites to his SUF and RFA to support this claim.   (*Id.*)   Both Plaintiff's SUF and RFA provide only that Denny's admits at the time of Plaintiff's visit that there was insufficient strike side clearance when exiting the men's restroom.   (SUF No. 44; RFA ¶ 40.)   Because Plaintiff does not cite to any specific evidence demonstrating that the strike side clearance was insufficient, he fails to meet his burden here. *Nationwide*, 182 F.3d at 161.

## C.   **Plaintiff's Unruh Civil Rights Act Claim**

"A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of [the Unruh Act]."   Cal. Civ.Code § 51(f).   "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6."   Cal. Civ.Code § 52(a).   Because the Court determined that Plaintiff established his ADA claim with respect to some of the violations, it follows that Plaintiff also established

1  those claims under the Unruh Civil Rights Act.  Therefore, the Court grants Plaintiff
2  $4,000 in damages under the Unruh Act.

3  **D.     Attorney's Fees**

4         Where a plaintiff prevails under the ADA or Unruh Civil Rights Act, they *may*
5  be entitled to reasonable attorney's fees including litigation expenses and costs.  42
6  U.S.C. § 12205 and California Civil Code § 52(a).  Under both statutes, the court is
7  given discretion to determine whether attorney's fees are appropriate.  42 U.S.C. §
8  12205 ("the court or agency, in its discretion, may allow the prevailing party . . . a
9  reasonable attorney's fee, including litigation expenses, and costs"); California Civil
10  Code § 52(a) (providing that a court *may* award attorney's fees in addition to actual
11  damages).  Here, although Plaintiff has prevailed on some of his ADA claims, the
12  Court finds an award of attorney's fees and costs inappropriate.

13         Both Plaintiff's and Defendants' attorneys have litigated this case exceptionally
14  poorly.  Both attorneys failed to participate in discovery, but neither party asked for
15  relief from the Court to compel discovery.  Plaintiff asked for a discovery extension
16  for the limited purpose of deposing Defendants' witnesses, which the Court granted.
17  (ECF No. 20.)  But, at the pretrial conference Plaintiff's attorney claims he was never
18  able to coordinate with Defendants to actually take those depositions.  No relief from
19  the Court was ever sought by Plaintiff prior to the pretrial conference.  It was also
20  during pretrial that the Court first heard that Defendants did not respond to Plaintiff's
21  RFAs.  Further, according to Defendants' Opposition, Plaintiff failed to supplement
22  his initial disclosures and for the first time produced documentary evidence to
23  Defendants on February 16, 2015 in conjunction with Plaintiff's summary judgement
24  motion.  (*See generally* Opp'n.)  Lastly, as described above, Plaintiff's brief is riddled
25  with citations to incorrect statue provisions and relies on RFAs that are sloppily and
26  imprecisely drafted.

27         The Court understands the importance of financially motivating attorneys to
28  ensure civil rights laws are being enforced, but the Court finds that the attorneys'

1  conduct in this case is more detrimental than beneficial to enforcing civil rights law.

2  Therefore, the Court **DENIES** attorneys' fees and costs for both parties.

## V.    CONCLUSION

4  For the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's

5  Motion for Summary Judgment with respect to his claim under the ADA for the

6  following violations only: (1) both access aisles having slopes and cross slopes that

7  exceed 2.0%; (2) both disabled parking spaces having slopes and cross slopes that

8  exceed 2.0%; and (3) failing to make the water closet stall door self-closing.   The

9  Court **DENIES** summary judgment with respect to the remaining alleged violations.

10  Further, because the Court finds Defendants violated the ADA, the Court **GRANTS**

11  Plaintiff's Motion for Summary Judgment with respect to his claim under the Unruh

12  Civil Rights Act.

13  The Court resets the bench trial date for the remaining claims to **June 16, 2015**

14  **at 9:00 a.m**.  Supplemental pretrial briefing and motions *in limine* are due by **June 1,**

15  **2015** and a hearing on those issues will be held on **June 8, 2015 at 1:30pm**.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Judgement is hereby entered in favor of Plaintiff as follows:

      1.  Defendants shall pay Plaintiff the sum of four thousand dollars ($4,000.00);

      2.  Defendants shall remedy the following violations in compliance with the ADAAG:

            a.  both access aisles having slopes and cross slopes that exceed 2.0%;

            b.  both disabled parking spaces having slopes and cross slopes that exceed 2.0%; and

            c.  failing to make the water closet stall door self-closing

**IT IS SO ORDERED.**

May 5, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**