# United States District Court
# Central District of California

| | |
|---|---|
| MICHAEL ROCCA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DEN 109 LP dba DENNY'S #7425;<br>FRITZ MOLLER; and GEISELA<br>MOLLER,<br><br>　　　　　Defendants. | Case No. 2:14-cv-00538-ODW-MRW<br><br>**FINDINGS OF FACT AND**<br>**CONCLUSIONS OF LAW** |

## I.　BACKGROUND

On January 23, 2014, Plaintiff Michael Rocca filed a Complaint alleging violations of the Americans with Disabilities Act ("ADA"), the Unruh Civil Rights Act, the California Disabled Persons Act ("CDPA"), and California Health and Safety Code section 19955(a) against Den 109 LP dba Denny's #7425, Fritz Moller, and Geisela Moller (collectively "Defendants").  Rocca, a paraplegic who uses a wheelchair for mobility, alleges that because he encountered at least fifteen architectural barriers prohibited by the ADA at Defendants' establishment, Defendants violated the ADA for failing to keep their facilities fully and equally accessible to persons with disabilities by ensuring compliance with federal building codes. Rocca further argues that because Defendants violated the ADA they necessarily violated the Unruh Civil Rights Act.

On January 26, 2015, at the parties' final pretrial conference, Rocca informed the Court that Defendants failed to respond to his Requests For Admission. Following the hearing, the Court gave Rocca leave to file a motion for summary judgment and continued the trial date until after a ruling on the motion. On February 16, 2015, Rocca moved for summary judgment. (ECF No. 37.) On May 5, 2015, the Court granted partial summary judgment for Rocca as to the following violations: (1) both access aisles having slopes and cross slopes that exceed 2.0%; (2) both disabled parking spaces having slopes and cross slopes that exceed 2.0%; and (3) failing to make the water closet stall door self-closing. (ECF No. 46.) The Court entered judgment in favor of Rocca, awarding him $4,000 in damages under the Unruh Act and required Defendants to remedy the three violations in compliance with the ADA Accessibility Guidelines ("ADAAG"). (*Id*.) The Court declined to award either party attorneys' fees. (*Id*. at 13–14.)

A bench trial was held on June 19, 2015 regarding the remaining alleged violations. The Court, having heard live testimony and duly considered the evidence, the credibility of the witness, the entire file and the contentions and arguments of counsel, hereby makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## II. FINDINGS OF FACT

1. Rocca resides in Lancaster, California.

2. Rocca is a T-6 paraplegic who uses a wheelchair for mobility and a mobility-equipped vehicle when traveling.

3. Defendants own, operate, and/or lease the Denny's Restaurant located at 11195 Long Beach Blvd in Lynwood, California.

4. The Denny's Restaurant is a sales or retail establishment which sells food and drinks and is open to the public.

5. The Denny's Restaurant intended for nonresidential use and its operation affects commerce.

6. The Denny's Restaurant provides goods, services, facilities, privileges, advantages, or accommodations at the facility.

7. On December 18, 2013, Rocca visited Defendants' restaurant. (Ex. 101; Trial Tr. 28:22–29:13, June 19, 2015.)

8. The Denny's Restaurant has two disabled parking spaces in the parking lot and Rocca parked in one of these spots during his visit. (Trial Tr. 31:1–6.)

9. The access aisle between the two disabled parking spaces was painted with a cross hatch, but not the words "NO PARKING." (*Id*. 33:8–20.)

10. During Rocca's visit he used the restroom, specifically the handicap stall. (*Id*. 36:18–22.) A trashcan was located within the stall. (*Id*. 39:13–16.)

11. After leaving the stall, Rocca proceeded to wash his hands at the sink where he encountered some pipes under the sink. (*Id*. 42:2–5.) He then retrieved paper towels from a dispenser by the sink. (*Id*. 5–11.)

### III. CONCLUSIONS OF LAW

**A. Title III of the Americans with Disabilities Act**

1. Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a). The ADA defines discrimination to include "the failure to remove architectural barriers" in existing facilities where such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA authorizes only injunctive relief for disabled individuals who suffer prohibited discrimination and does not provide for the recovery of monetary damages by private individuals. *See* 42 U.S.C. § 12182(a)(2); *Pickern v. Holiday Quality Foods, Inc*., 293 F.3d 1133, 1136 (9th Cir. 2002).

2. To prevail on a Title III, ADA claim, Rocca must establish that (1) he is disabled within the meaning of the ADA; (2) that Defendants are private entities that own, lease, or operate, a place of public accommodation; (3) that Rocca was denied public accommodation by Defendants because of his disability; (4) that the barriers Rocca allegedly encountered present architectural barriers prohibited under the ADA;

and (5) the removal of those barriers are readily achievable. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 2007–08 (C.D. Cal. 2014) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) and *Parr v. L&L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)).

    3.    Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA lists "walking" and "standing" as "major life activities." *Id.* § 12102(2)(A). The parties do not dispute that Rocca is a paraplegic and thus clearly disabled under this definition. *See Vogel*, 992 F. Supp. 2d at 1009 (holding paraplegic plaintiff was disabled within the meaning of the ADA).

    4.    The ADA specifically lists restaurants as "private entities considered public accommodations." 42 U.S.C. § 12181(7)(B). The parties do not dispute that the restaurant is a place of public accommodation that Defendants own and operate.

    5.    Rocca alleges that he was denied public accommodation by Defendants because he encountered at least fifteen architectural barriers prohibited by the ADA. As mentioned above, the Court has already ruled in favor of Rocca as to three of the allegations during summary judgment, and therefore does not need to address them now. (*See* ECF No. 46.) Further, at the outset of the trial, Rocca withdrew the following allegations: (1) the toilet tissue dispenser obstructs the use of the side grab bar; (2) the toilet tissue dispenser is mounted too far from the back wall and from the front of the water closet; (3) the waste receptacle obstruct the clear floor space required to access the paper towel dispenser; and (4) there is insufficient strike side clearance on the pull-side of the restroom door. (Trial Tr. 3:3–4:9.) Therefore, the Court need not address these allegations as well.

**B.    Standing**

    6.    With regard to the remaining alleged violations, the Court must first address the issue of standing. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) ("Federal courts are required sua sponte to examine jurisdictional

issues such as standing.") To have standing under the ADA, a plaintiff must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the defendants' actions, and that the injury can be redressed by a decision in his favor. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). A person with a disability suffers an injury-in-fact when he encounters a barrier at a place of public accommodation that "deprives him of full and equal enjoyment of the facility due to his particular disability." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907 (9th Cir. 2011). Because the ADAAG "establish the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA." *Chapman*, 631 F.3d at 947. Under the ADA, a plaintiff is injured the first time he or she encounters an architectural barrier that relates to his or her disability. *Id.* at 950. Once the first barrier is encountered, a plaintiff may sue for injunctive relief as to all other barriers related to his or her disability, regardless of whether he or she actually encountered the other barriers. *Id.* at 951.

7. A plaintiff seeking injunctive relief for barriers not encountered, in addition to showing he actually encountered any barrier related to his disability, must also demonstrate a "real and immediate threat of repeated injury" in the future. *Id.* at 946 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). A plaintiff can demonstrate a real and immediate threat of future injury by demonstrating either: (1) plaintiff intends to return to the noncompliant accommodation and is likely to reencounter the discriminatory architectural barriers; or (2) plaintiff is deterred from returning to the noncompliant accommodation entirely because of the discriminatory architectural barriers. *Id.* at 949.

8. There is no question that Rocca has standing regarding the barriers he actually encountered during his visit to Denny's. *See id.* at 950. But, with respect to the barriers that Rocca did not actually experience, and therefore did not deprive him

of "full and equal enjoyment," the Court finds that Rocca does not having standing for prospective injunctive relief. Rocca has failed to show either intent to return or deterrence from returning. *Id*. at 953 ("An ADA plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury. He lacks standing if he is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability.")

       9.    The Court finds Rocca's testimony lacks credibility. Rocca admits to being a native and longtime resident of southern California, specifically residing in Lancaster, California for the past 25 years. (Trial Tr. 27:8–13.) As a longtime resident of Lancaster, Rocca testified that he decided to stop at the Denny's in Lynwood on his way to Redondo Beach. Rocca testified that his preferred route is to take the 5 Freeway, rather than the obvious and more direct choice of the 405 Freeway. (*Id*. 65:11–19.) Further, when asked why he would pass the 110 Freeway while continuing on the 5 Freeway, Rocca was not able to provide a reason. (*Id*. 65:20–24.) The Court finds it difficult to believe that any southern-Californian native would take a route that adds an additional 20 miles east while heading to the beach.[1] Based upon this testimony, the Court finds Plaintiff's purpose in visiting the Denny's in the instant case was to identify potential ADA violations, not actually take a rest stop on the way to the beach. Moreover, Rocca never testified about his intentions to return to the Denny's and the Court finds it implausible that Rocca would travel over 80 miles from his home in Lancaster to eat at the Denny's in Lynwood. *See Harris v. Stonecrest Care Auto Ctr*., *LLC*, 472 F. Supp. 2d 1208, 1212 (S.D. Cal. 2007) ("[T]he Court finds it doubtful that [plaintiff] would frequently travel miles out of his way to

---

[1] The parties did not provide the Court a map. However, based upon the undisputed address of the Denny's restaurant, the Court takes judicial notice of a Google map image as a source whose accuracy cannot reasonably be questioned for purposes of this case. *See U.S. v. Perea-Rey*, 680 F.3d 1179, 1182 n. 1 (9th Cir. 2012).

visit a particular McDonald's restaurant and buy gasoline and convenience store items from a particular Shell station as he testified.").

10. Therefore, because Rocca cannot show he was actually injured by some of the barriers nor an intent to return to the Denny's, the Court finds that Rocca does not have standing to assert the following violations under the ADA: (1) the words "NO PARKING" are not painted within the access aisles; (2) incorrect signage posted at the van accessible parking space; and (3) the tow away signage postage is incorrect. Each violation will be addressed in turn.

    a. Rocca asserts that Defendants violated ADAAG section 502.3.3 and California Building Code ("CBC") section 11B-502.3.3 by failing to mark the parking access ramp with the words "NO PARKING" to discourage unqualified individuals from illegally parking in the access aisles. (Plaintiff's Amended Trial Brief ["PTB"] 3, ECF No. 47.) Although section 502.3.3 of the ADAAG mandates the access aisles be "clearly marked," it does not provide the specific language that must be used. Therefore, Rocca's allegation is solely based upon the CBC. Rocca's exhibits show that the access aisle was clear at the time of Rocca's visit and therefore he did not suffer any injury with respect this barrier. (*See*, *e.g*., Ex. 100-49.) Accordingly, the Court finds that Rocca does not have standing to assert this allegation because he suffered no injury-in-fact and does not intend to return. *See supra*.

    b. Rocca asserts that Defendants violated the ADA by failing to provide proper "van-accessible" signs and complying with CBC section 1129B.4. (PTB 3.) Rocca testified that he was not driving a van at the time of his visit nor does he drive a van now. (Trial Tr. 54:20–55:2 ("I drive a 2004 Mercedes Benz station wagon . . . I was driving a Pontiac Grand-Am.").) Rocca fails to prove how he could have been injured by the lack of the "van-accessible" sign when Rocca was not driving a van at the time of his visit. Accordingly, the Court finds that Rocca does not have standing to assert this allegation because he suffered no injury-in-fact and does

not intend to return. *See supra*.

   c. Rocca asserts that Defendants fail to provide the correct tow away signage because its tow away signage fails to comply with California Manual on Uniform Traffic Control Devices (MUTCD) section 2B.39 (R100B) and CBC section 1129B.5. (PTB 4.) As an initial matter, "an architectural feature that is inconsistent with the California MUTCD is not a per se violation of the ADA." *Oliver*, 654 F.3d at 911. Therefore, Rocca's only allegation relates to a violation of the CBC. *See Moeller*, 816 F. Supp. 2d at 848 (holding that in order for a plaintiff to allege he was denied public accommodation on the basis of his disability under the ADA, he must establish that the defendant violated the ADAAG). Rocca argues that noncompliance with the CBC provision may cause confusion and would prevent Rocca from towing illegally parked vehicles. (PTB 4.) Rocca's exhibits and testimony prove that the handicap parking spaces were available when Rocca visited the Denny's and he was not confused as to where to park. (*See*, *e.g.*, Exs. 100-49, 73; Trial Tr. 34:3–24.) Therefore, the tow away sign did not injure Rocca. Accordingly, the Court finds that Rocca does not have standing to assert this allegation because he suffered no injury-in-fact and does not intend to return. *See supra*.[2]

## C. Remaining Barriers

11. Rocca asserts that Defendants violated the ADA by failing to provide a handle below the water closet stall door lock. (PTB 4.) The ADAAG provides that door hardware must be 34 inches minimum and 48 inches maximum above the floor or ground. ADAAG § 404.2.7. Only CBC section 1115B.3.1.4.5 requires that the inside and outside of a water closet compartment door must be equipped with a loop or u-shaped handle located immediately below the latch. The evidence presented by Rocca does not provide any measurements to prove a violation of the ADAAG. (*See*

---

[2] Notwithstanding the fact Plaintiff does not have standing, Rocca failed to prove that Defendants violated the CBC. Section 1129B.4 requires that signs must be "not less than 17 inches by 22 inches in size with 1 inch high minimum lettering." Rocca's exhibits fail to show any measurements to prove that Defendants do not comply with this provision. (*See*, *e.g.*, Ex. 100-73.)

Exs. 100-60, 63.) With respect the CBC, Rocca's exhibits show the handle to the left of the latch instead of below. (*Id.*) Therefore, the Court finds that Defendants have violated the CBC provision.

12. Rocca asserts Defendants violated ADAAG section 604.3.1 because the waste receptacle stored within the stall obstructed the clear maneuvering space needed to access the water closet. (PTB 4.) Section 604.3.1 provides "[c]learance around a water closet shall be 60 inches (1525 mm) minimum measured perpendicular from the side wall and 56 inches (1420 mm) minimum measured perpendicular from the rear wall." Rocca has failed to provide the Court with measurements showing that the position of the waste receptacle was either less than 60 inches measured perpendicular from the sidewall or less than 56 inches measured perpendicular from the rear wall. (*See* Exs. 100-58, 59.) Instead, Rocca merely provides conclusory statements and thus fails to meet his burden of persuasion. *Nationwide*, 182 F.3d at 161. Therefore Rocca fails to prove Defendants violated this provision of the ADAAG.

13. Rocca asserts that Defendants violated ADAAG section 606.5 by failing to properly and completely wrap the pipes beneath the lavatories. (PTB 6.) Section 606.5 provides in relevant part: "[w]ater supply and drain pipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact." According to Rocca's exhibits, the pipes appear sufficiently wrapped. (Exs. 100-67, 68.) Further, Rocca testified that he was not burned or injured by any of the pipes because he did not come into contact with them. (Trial Tr. 61:22–62:2.) Therefore, Rocca has failed to prove the pipes beneath the lavatory were improperly and incompletely wrapped. The Court finds no violation by Defendants.

14. Rocca asserts that Defendants violated the ADA because the operable part of the paper towel dispenser in the restroom was mounted more than 40 inches above the floor. (PTB 7.) Rocca only cites to CBC section 1115B.9.2 for the proposition that the operable parts of paper towel dispensers must be mounted a maximum of 40 inches above the floor. (*Id.*) Rocca fails to provide any testimony or

evidence indicating how high the paper towel dispenser was mounted. (*See* Exs. 100-65, 66.) Further, both Defendants' and Rocca's exhibits show that there was a lower paper towel dispenser that Rocca could have accessed. (Ex. 1000; Trial Tr. 64:8–65:7; *see also* Ex. 100-65.) Therefore, the Court finds no violation by Defendants.

### D. The Unruh Act and CDPA

15. The Unruh Act and CDPA prohibit discrimination on the basis of disability in the full and equal access to the services, facilities, and advantages of public accommodation. Public accommodations constructed subsequent to July 1, 1970 are subject to the requirements of Division 13, Part 5.5 of the California Health & Safety Code, relating to access to public accommodations by physically handicapped persons; and to the provisions of Chapter 7 (commencing with § 4450) of Division 5 of Title 1 of the California Government Code (access to public buildings by physically handicapped persons). Since December 31, 1981, the standards governing the physical accessibility of public accommodations in California include those set forth in Title 24 of the California Building Code ("Title 24" or "CBC"). *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 848 (N.D. Cal. 2011). A violation of the standards in Title 24 constitutes a violation of both the Unruh Act and the CDPA. *See, e.g., Arnold v. United Artists Theater Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994). In addition, the Unruh Act, since 1992, and the CDPA, since 1996, have also provided that "[a] violation of the right of any individual under the [ADA] . . . constitute[s] a violation of this section." Cal. Civ. Code §§ 51(f), 54(c). Unlike the ADA, the Unruh Act and CDPA permits awards of statutory minimum damages; plaintiffs may recover $4,000 under the Unruh Act and $1,000 under the CDPA for each instance of discrimination. *See id.* §§ 52(a), 54.3.

16. The Ninth Circuit has ruled that in order for a plaintiff to recover statutory damages under the Unruh Act or the CDPA, a plaintiff must prove that he experienced difficulty, discomfort, or embarrassment because of an encounter with a violation of an accessibility standard. *Doran v. 7-Eleven*, No. 11-55619, 2013 WL

602251, *2 (9th Cir. Feb. 19, 2013).

17. The only violation that Rocca has proven is with respect to the placement of the handle to the water closet stall door. *See supra*. The Court finds that Rocca is not entitled to statutory damages for this violation because he provided no testimony or evidence that the location of the water closet handle caused him any difficulty, discomfort, or embarrassment.

### IV. CONCLUSION

For the reasons stated above, the Court finds in favor of Defendants as to the following violations: (1) the pipes underneath the lavatory are improperly wrapped; (2) the paper towel dispenser is mounted too high; and (3) the waste receptacle protrudes in the clear maneuvering space needed to access the water closet. The Court dismisses with prejudice the following allegations for lack of standing: (1) the words "NO PARKING" is not painted within the access aisles; (2) incorrect signage posted at the van accessible parking space; and (3) the tow away signage posted is incorrect. Lastly, the Court finds that Rocca is only entitled to injunctive relief with respect to the handle not being mounted below the water closet stall door lock. A separate judgment will issue.

**IT IS SO ORDERED.**

August 19, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**