

**O**

1
2
3
4
5
6
7
8             **UNITED STATES DISTRICT COURT**
9             **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11 MICHAEL ROCCA, | Case No. 2:14-cv-00538-ODW(MRW) |
| 12           Plaintiff, | **ORDER GRANTING PLAINTIFF'S** |
|     v. | **MOTION FOR ATTORNEYS' FEES** |
| 13 | **AND COSTS [74]** |
| DEN 109 LP dba DENNY'S #7425; | |
| 14 FRITZ MOLLER; and GEISELA | |
| MOLLER, | |
| 15 | |
|           Defendants. | |
| 16 | |

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

# I.   INTRODUCTION

Before the Court is Plaintiff Michael Rocca's motion for attorneys' fees.  (ECF No. 74.)   For the following reasons, the Court **GRANTS** Plaintiff's motion and awards him **$47,299.31**.

# II.   FACTUAL BACKGROUND

Plaintiff is a paraplegic who uses a wheelchair for mobility and a "mobility equipped vehicle when traveling."  (Compl. ¶ 8, ECF No. 1.)  Defendants Fritz and Geisela Moller are associated with Defendant Den 109 LP, a Denny's restaurant in Lynwood, California.  (*Id.* ¶ 2.)

Plaintiff visited the Denny's in question "and encountered barriers" that interfered with his ability to "enjoy the goods, services, privileges, and accommodation offered at the facility."  (*Id.* ¶ 10.)  Plaintiff allegedly encountered fifteen distinct barriers during his visit:

1. Parking lot access aisles with a slope exceeding two percent;
2. Parking lot access aisles without a painted "No Parking" label;
3. Disabled parking spots with slopes and cross slopes exceeding two percent;
4. Incorrect signage for the van accessible parking space;
5. Incorrect tow-away signage for the disabled parking spaces;
6. Absence of a handle-mounted door lock in the water closet;
7. Absence of a self-closing door in the water closet;
8. A waste receptacle that obstructs access to the water closet;
9. A toilet tissue dispenser that obstructs the use of a side-grab bar;
10. A toilet tissue dispenser that is too far from the back wall;
11. A toilet tissue dispenser that is too far from the front of the water closet;
12. Pipes beneath the lavatories that were improperly or incompletely wrapped;
13. A waste receptacle that obstructs access to the paper towel dispenser;

14. A paper towel dispenser that is mounted too high; and

15. Insufficient strike-side clearance when exiting the restroom.

On January 23, 2014, Plaintiff filed a complaint asserting violations of: (1) the Americans with Disabilities Act ("ADA"); (2) the California Disabled Persons Act; (3) the Unruh Civil Rights Act; and (4) California Health and Safety Code section 19955. (*Id.* ¶¶ 15–51.) On February 16, 2015, Plaintiff filed a motion for summary judgment. (ECF No. 37.) On May 5, 2015, the Court granted in part Plaintiff's motion, finding that Plaintiff had established the existence of three barriers to access: that the parking lot aisles had a slope exceeding two percent, that the disabled parking spaces had slopes and cross slopes exceeding two percent, and that the door in the water closet was not self-closing. (Order 6–8, 14, ECF No. 46.) The Court ordered Defendants to remedy these violations and pay Plaintiff $4,000 in damages. (Judgment, ECF No. 46.) The Court denied Plaintiff's motion as to the remaining barriers. (Order 7–12, 14.)

The case then proceeded to trial. At trial, Plaintiff established the existence of one additional barrier: lack of a handle-mounted door lock in the water closet. (Conclusions of Law ¶ 11, ECF No. 54.) However, the Court found that Plaintiff had failed to satisfactorily establish the existence of the remaining barriers. (*Id.* ¶¶ 10, 12–14.)

On September 2, 2015, Plaintiff filed a motion seeking $37,626.89 in attorneys' fees, litigation expenses, and costs. (Mot. 15, ECF No. 57-1.) On September 23, 2015, the Court denied Plaintiff's motion in its entirety. (Order 6, ECF No. 64.)

Plaintiff separately appealed the Court's Findings of Fact and Conclusions of Law and its decision on his motion for attorneys' fees. (ECF Nos. 59, 69.) Those appeals were subsequently consolidated upon Plaintiff's motion. (*See* Appellate Docket Entry 7 (granting unopposed motion to consolidate).) On March 23, 2017, the Ninth Circuit issued an order affirming the Court's Findings of Fact and Conclusions of Law. *Rocca v. Den 109 LP*, No. 15-56407, 2017 WL 1089550, at *2 (9th Cir. Mar.

23, 2017).  However, the Ninth Circuit reversed the Court's denial of Plaintiff's motion for attorneys' fees, noting that Plaintiff was in fact the prevailing party and thus entitled to some measure of fees.  *Id.*  The Ninth Circuit remanded the case for a determination of the appropriate measure of attorneys' fees.  *Id.*

Plaintiff filed the pending motion for attorneys' fees on May 8, 2017, seeking $86,734.31 in attorneys' fees, litigation expenses, and costs.  (New Mot. 14, ECF No. 74-1.)  That motion is now fully briefed and ready for decision.  (*See* ECF Nos. 75–76.)[1]

### III.   LEGAL STANDARD

"The ADA authorizes a court to award attorneys' fees, litigation expenses, and costs to a prevailing party."  *Moore v. Chase, Inc.*, No. 1:14-CV-01178-SKO, 2016 WL 3648949, at *1 (E.D. Cal. July 7, 2016) (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002)); *see also* 42 U.S.C. § 12205.  In determining an appropriate fee award, courts must first calculate the "lodestar" figure by multiplying the reasonable hourly rate in the community at issue with the number of hours reasonably expended on the litigation.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990).  After determining the lodestar figure, the Court may adjust the award based on the *Kerr* factors, which include: (1) the time and labor required; (2) the novelty and difficult of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Kerr v. Screen Extras Guild*, Inc., 526 F.2d 67, 70 (9th Cir. 1975)

---

[1] After considering the papers filed in connection with this motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

*abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). Courts "need not consider all twelve factors . . . only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002).

## IV.  DISCUSSION

**A. The Loadstar Figure**

### 1.  Reasonable Hourly Rate

Plaintiff requests fees in the amount of $600/hour for lead counsel Scottlyn Hubbard and senior partner Lynn Hubbard; $400/hour and $300/hour for associates Khush Mehton and Stephanie Ross, respectively; and $125–$150 an hour for paralegals assigned to this case.  (New Mot. 7, 14; Hubbard Decl., Ex. 2 at 2–3, ECF No. 74-4.)

Reasonable hourly rates are determined by examining "prevailing rate[s]" in the relevant community for attorneys and paralegals performing similar work with comparable levels of "skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)).  The relevant community is the district in which the adjudicating court "sits." *Id.* (citing *Barjon*, 132 F.3d at 500).

The party seeking attorneys' fees bears the burden of showing that the proposed hourly rate is reasonable. *See id.* at 980 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  This is done by submitting affidavits of counsel, affidavits of other counsel in the relevant community, and by providing case law examples of the relevant community rate. *See id.* at 980–81.

In support of his proposed hourly rates, Plaintiff submits a declaration from lead counsel, Scottlyn Hubbard, detailing Hubbard's knowledge and expertise and the knowledge and expertise of other counsel who worked on this case.  (Hubbard Decl., ECF No. 74-2.)  Plaintiff also submits the declaration of attorney Russell Handy, another ADA practitioner in the Central District, who indicates that Hubbard's

proposed hourly rate is reasonable. (Handy Decl. ¶ 9, ECF No. 74-6.) Finally, Plaintiff points to case law suggesting that Hubbard's proposed rate is reasonable. (New Mot. 6); *see also Camarillo v. Cty. of Maywood*, Case No. 2:07-cv-3469-ODW (SHx), 2015 WL 505886, *9 (C.D. Cal. Feb. 04, 2015) (finding similarly experienced civil rights counsel's $650 hourly rate reasonable) *overruled on other grounds by Gonzalez v. City of Maywood*, 671 F. App'x 564 (9th Cir. 2016). Defendants have not opposed Plaintiff's proposed hourly rates. In light of Plaintiff's supporting documentation and the relevant case law, the Court finds that Plaintiff's proposed hour rates are reasonable.

### 2. Number of Hours Reasonably Expended on the Litigation

Plaintiff is entitled to compensation for all time *reasonably* spent litigating this case. *Camacho v. Bridgeport Fin., Inc.*, No. C 04-00478 CRB, 2008 WL 2951290, at *5 (N.D. Cal. July 24, 2009) (emphasis added). Plaintiff seeks compensation for 187.25 hours of attorney and paralegal work. (Hubbard Decl., Ex. 2 at 12, ECF No. 74-4.)

The Court will give Plaintiff and his counsel this—they have some chutzpah in putting forth their proposed "reasonable" hours calculation. On September 2, 2015, in support of Plaintiff's previous motion for attorneys' fees and after the conclusion of the proceedings before this Court, Plaintiff's counsel Scottlynn Hubbard signed a declaration under penalty of perjury indicating that the "billing entries" (hereafter "Bill 1") attached as Exhibit 3 were "true and accurate." (Hubbard Decl. ¶ 22, ECF No. 57-2.) Bill 1 indicates that Hubbard's firm spent 76.45 hours "total" on the proceedings before this Court. (Hubbard Decl., Ex. 3 at 12, ECF No. 57-4.) On May 8, 2017, Hubbard signed a declaration under penalty of perjury indicating that the "billing entries" (hereafter "Bill 2") attached as Exhibit 2 were "true and accurate." (Hubbard Decl. ¶ 24, ECF 74-2.) Bill 2 indicates that Hubbard's firm spent 187.25 hours "total" on the proceedings before this Court and the two appeals before the Ninth Circuit. (Hubbard Decl., Ex. 2 at 12, ECF No. 74-4.)

It is hardly surprising that Bill 2 contains a higher hours "total" than Bill 1 given that it takes into account the hours expended on appeal. Nevertheless, Bill 2 is extremely worrisome. Adding together the time entries after August 19, 2015, the last entry (Entry 203) on Bill 1, reveals that Plaintiff's counsel spent 67.8 hours on appeal in this matter. (*See* Hubbard Decl., Ex. 2 at 10–12, ECF No. 74-4.) This means that Plaintiff and his counsel are now seeking to recover for 119.45 hours associated with the proceedings before this Court—forty-three more hours than the "total" previously sought. (*Compare* Hubbard Decl., Ex. 3, ECF No. 57-4, *with* Hubbard Decl., Ex. 2, ECF No. 74-4.)

Plaintiff's after-the-fact addition of hours is totally unacceptable. Moreover, it is totally unjustified—Plaintiff does not even acknowledge or explain the addition of the forty-three hours in his pending motion. For these reasons, the Court will not use the proposed 187.25-hour "total" in calculating the lodestar figure. Instead, the Court will use 144.25 hours: the 76.45-hour "total" from Bill 1 plus the 67.8 hours associated with the appeals in this matter. (*See* Hubbard Decl., Ex. 3, ECF No. 57-4 at 12; Hubbard Decl., Ex. 2, ECF No. 74-4.)

### 3. Loadstar Calculation

Attorneys' fees for the proceedings before this Court are **$31,612.50** and attorneys' fees on appeal are **$25,425**. Accordingly, the loadstar figure is **$57,037.50**.

## B. Reductions to the Loadstar Figure for Limited Success

The Supreme Court held in *Hensley v. Eckerhart*, 461 U.S. 424, 434–440 (1983) that the extent of a Plaintiff's success is a "crucial factor" in determining whether to reduce the loadstar figure. *See also Kerr*, 526 F.2d at 70 (noting that "results obtained" may warrant a reduction of the loadstar figure). Therefore, the Court considers the extent of Plaintiff's success in the proceedings before this Court and on appeal.

///

///

### 1.  The Proceedings Before This Court

Plaintiff was successful on summary judgment and at trial in proving that he encountered four out of the fifteen alleged barriers.  Defendants argue that the loadstar figure should be reduced on a pro-rata basis to reflect this rate of success.  (Opp'n 10, ECF No. 75.)  Plaintiff argues in response that case law explicitly forecloses such a pro-rata reduction where the claims alleged are related, meaning they share a common legal theory.  (Reply 6–10, ECF No. 76.)

Plaintiff is correct.  Where, as here, the claims are related, courts may not effect a pro-rata reduction.  *See Chapman v. Pier 1 Imports, Inc.*, No. CV.S-04-1339 LKK/DAD, 2007 WL 2462084, at *3 (E.D. Cal. Aug. 24, 2007).  Nevertheless, the Court may still effect some reduction in recognition of Plaintiff's limited success.  In *Chapman v. Pier 1 Imports, Inc.*, another ADA case involving Plaintiff's counsel, the plaintiff was successful at trial in proving that he encountered seven out of twenty-two alleged barriers.   2007 WL 2462084, at *3.  Based on that rate of success, the district court reduced the loadstar figure by fifteen percent.  *Id.*  Plaintiff's rate of success in this case was even lower than the plaintiff in *Chapman* (the plaintiff in *Chapman* prevailed on thirty-two percent of his barrier claims to Plaintiff's twenty-six percent.)  Accordingly, the Court reduces Plaintiff's attorneys' fees relevant to the proceedings before this Court by twenty percent to reflect his limited success.[2]   Therefore, Plaintiff's attorneys' fees relevant to the proceedings before this Court are reduced from $31,612.50 to **$25,290**.

### 2.  On Appeal

Plaintiff filed two appeals: an appeal of the Court's decision on the merits and an appeal of the Court's decision on his motion for attorneys' fees.  (*See* ECF Nos. 59, 69.)  As noted above, these two appeals were subsequently consolidated.  Plaintiff now seeks to recover attorneys' fees associated with both appeals.

---

[2] It is worth pointing out that Plaintiff acknowledges a reduction of some type may be necessary to reflect his limited success.  (Reply 11.)

It is beyond dispute that Plaintiff may recover for the successful appeal of his motion for attorneys' fees. *Rodgers v. Claim Jumper Rest., LLC*, No. 13-CV-5496 YGR, 2015 WL 1886708, at *9 (N.D. Cal. Apr. 24, 2015) ("The Court may award fees for 'time spent by counsel in establishing the right to a fee award.'" (quoting *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992)). However, the Court will not award fees for Plaintiff's unsuccessful appeal of the Court's decision on the merits. Had Plaintiff's appeals not been consolidated, he would not have been entitled to recover attorneys' fees associated with his unsuccessful merits appeal. *Clark v. City of Los Angeles*, 803 F.2d 987, 993 (9th Cir. 1986) (holding that a district court did not abuse its discretion in denying attorneys' fees for unsuccessful appeal); *Thompson v. Gomez*, 45 F.3d 1365, 1368–69 (9th Cir. 1995) (suggesting that attorneys' fees may be "awarded for work performed on successful appeals . . . but not for unsuccessful ones."). The mere use of consolidation, an administrative tool that promotes judicial economy, should not function to make attorneys' fees associated with an otherwise unsuccessful appeal recoverable. As the Court is unable to distinguish in Bill 2 between time spent on the merits appeal and time spent on the motion appeal, the Court will reduce the attorneys' fees associated with the two appeals by fifty percent to reflect Plaintiff's success on one out of the two appeals. Therefore, the attorneys' fees associated with the two appeals are reduced from $25,425 to **$12,712.50**.

## C. Litigation Expenses and Costs

The ADA provides that the prevailing party may recover litigation expenses and costs as part of a motion for attorneys' fees. *Moore*, 2016 WL 3648949, at *1 (quoting *Lovell*, 303 F.3d at 1058); 42 U.S.C. § 12205. Plaintiff requests a total of $9,296.81 in litigation expenses and costs. (New Mot. 14.) Defendant contends that Plaintiff offers no support for his proposed award of litigation expenses and costs. (Opp'n 11.) While the expense entries Plaintiff submits are at times inconsistent, Plaintiff has submitted supporting documentation for the vast majority of his claimed

litigation expenses and costs. (*See* Hubbard Decl., Ex. 3, ECF Nos. 74-5.) Therefore, the Court awards Plaintiff **$9,296.81** in litigation expenses and costs.

## V. CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's motion for attorneys' fees. (ECF No. 74.) The Court awards Plaintiff attorneys' fees in the amount of **$38,002.50** ($25,290 associated with the proceedings before this Court and $12,712.50 associated with his successful appeal) and litigation costs and expenses in the amount of **$9,296.81** for a total award of **$47,299.31**.

**IT IS SO ORDERED.**

June 13, 2017

_____

**HON. OTIS D. WRIGHT II**
**UNITED STATES DISTRICT JUDGE**